# In the United States Court of Federal Claims

No. 15-714T

(Filed: March 4, 2016)

|  |  |  |
|---|---|---|
| **GARY A. WOLENS,** | ) ) ) | Tax case; payments to former spouse pursuant to English divorce decree; statutory test for alimony; I.R.C. § 71(b)(1); IRS's inconsistent position in tax case involving former spouse pending before the Tax Court |
| **Plaintiff,** | ) ) |  |
| v. | ) ) |  |
| **UNITED STATES,** | ) ) |  |
| **Defendant.** | ) ) ) |  |

Anson H. Asbury, Asbury Law Firm, Atlanta, Georgia, for plaintiff.

Margaret E. Sheer, Trial Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant.  With her on the briefs were Caroline D. Ciraolo, Acting Assistant Attorney General, Tax Division, David I. Pincus, Chief, Court of Federal Claims Section, and G. Robson Stewart, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

In this tax-refund case, plaintiff Gary Wolens seeks a refund of $353,751 in income taxes allegedly overpaid for tax year 2007.  Mr. Wolens asserts that a payment he made in 2007 (the "2007 payment") to his former spouse ("Ms. Wolens") pursuant to their divorce decree in the amount of £441,667 (equivalent to $877,076) was an alimony payment, and therefore deductible from his taxable income for the 2007 tax year.  The government contends that this payment fails the statutory test for alimony under 26 U.S.C. (Internal Revenue Code or "I.R.C.") § 71(b)(1) because, under the terms of the divorce decree and by application of relevant law, Mr. Wolens would still have been liable for the payment in the event of the death of Ms. Wolens.  Consequently, the government asserts that the payment was a division of marital assets that is not deductible from plaintiff's taxable income for 2007.

Pending before the court is the government's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").  The government argues that Mr. Wolens has not stated a plausible claim for relief because the 2007 payment cannot be considered alimony under the relevant law.  Conversely, Mr. Wolens has moved for summary judgment in his favor under RCFC 56(a), asserting that he has pled sufficient, uncontested facts to establish that the 2007

payment was in fact alimony under the relevant law. The court concludes that both the government's motion to dismiss and the plaintiff's motion for summary judgment should be denied. Although Mr. Wolens has pled sufficient facts to plausibly allege that the 2007 payment was deductible alimony, there remains a genuine dispute about those facts that cannot be resolved without further proceedings.

## BACKGROUND

Mr. Wolens and Ms. Wolens were married in New York in 1986. *See* Pl.'s Supplemental Br. in Opp'n to Def.'s Mot. to Dismiss and in Support of Pl.'s Mot. for Summary Judgment ("Pl.'s Cross-Mot.") at 7, ECF No. 17. They later moved to London, England and resided there together through the time of their divorce on January 24, 2006, which divorce was granted by order of the United Kingdom High Court of Justice, Family Division. *Id.*; Compl. ¶¶ 11-12.[1] Neither Mr. Wolens nor Ms. Wolens established a domicile in the United Kingdom, nor did they domesticate their marriage under U.K. law. *See* Pl.'s Cross-Mot. at 7. Mr. Wolens still claims domicile in New York. *See* Hr'g Tr. 33:13-17 (Jan. 6, 2016), ECF No. 16.[2]

The divorce decree issued by the High Court of Justice consists of three sections: (1) the undertakings required of Mr. Wolens; (2) the agreements by both parties relative to the decree; and (3) the court's orders. Compl. Ex. A ("Divorce Decree").[3] The first section (numbered as Paragraphs I-III) specifies that Mr. Wolens will (1) obtain a "get" (a Jewish bill of divorce) and deliver it to Ms. Wolens on the date of sale of their marital residence (the "payment date");[4] (2) obtain life insurance in an amount sufficient to secure the payments owed to Ms. Wolens under Subparagraphs 5(c) through (e) of the decree; and (3) make payments to Ms. Wolens under an interim financial arrangement until the payment date, except that after the first "lump sum" payment specified in Subparagraph 5(a) of the decree, he will no longer be liable for the payment of £6000 per month under that arrangement. Divorce Decree at 2. The second section (designated as Paragraphs A through E) states, in relevant part, that "the provisions of this order

---

[1]The jurisdiction of the United Kingdom High Court of Justice, Family Division with regard to divorce proceedings is defined by European Union Council Regulation No. 1347/2000, adopted on May 29, 2000. *See* Domicile and Matrimonial Proceedings Act 1973, c. 45, § 5(2) (Eng. & Wales). Under the Council Regulation, the courts of a member state have jurisdiction over divorces where both spouses are "habitually resident" in that state. 2000 O.J. (L 160) 30/06/2000, at ch. II, § 1, art. 2.1(a). A person is "habitually resident" in a state when he or she resided there for at least a year immediately before the application for divorce was made. *Id.*

[2]The date of the hearing will be omitted from further citations to the transcript.

[3]The complaint and its exhibits were filed under seal by leave of the court to protect the personally identifiable information of plaintiff and his family. Order of July 10, 2015, ECF No. 6. This opinion omits protected personally identifiable information.

[4]The payment date is a defined term in the decree, meaning "the date of the completion of the sale of the property[, *i.e.*, the former matrimonial home 'Beaulieu,'] or, in the event that [Mr. Wolens] exercises [an] option [to purchase Ms. Wolens' interest in the property], 42 days after he gives notice thereof." Divorce Decree at 1.

are to be in full and final satisfaction of all claims in any jurisdiction that either party may have against the other arising out of their marriage." *Id*.

Paragraphs 1 through 4 of the third section govern the sale of the marital property and the division of the proceeds and associated chattels. Divorce Decree at 3-5. Paragraph 5 is of particular relevance to the present case, and orders Mr. Wolens to pay five "lump sums" to Ms. Wolens as follows:

  a. £1,000,000 by 15 February 2006;
  b. £2,300,000 upon the payment date;
  c. £441,667 by 15 April 2007;
  d. £441,667 by 15 April 2008;
  e. £441,666 by 15 April 2009.

*Id*. at 5. Paragraph 6 orders the transfer of Mr. Wolens' interest in two individual retirement accounts and certain airline miles to Ms. Wolens. *Id*. at 5. Paragraphs 7 through 9 pertain to Mr. Wolens' financial obligations with respect to his four children, including "periodical payments" of £12,500 per year for a specified time. *Id*. at 5-6. Finally, Paragraph 10 states:

> Save as aforesaid (and subject to delivery of the get) all of the claims of [Ms. Wolens] against [Mr. Wolens] and of [Mr. Wolens] against [Ms. Wolens] for any sort of provision in respect of this marriage shall stand dismissed and neither would be entitled to apply for an order under the Inheritance (Provision for Family and Dependents) Act 1975 even if, by the date of their death, the other party had become domiciled in England and Wales (neither being so domiciled at present).

*Id*. at 6.

Mr. Wolens made the 2007 payment of £441,667 ($877,076) to Ms. Wolens pursuant to Subparagraph 5(c) of the divorce decree. Compl. ¶ 17. He did not report this payment as deductible alimony on his original 2007 U.S. tax return. Compl. Ex. B. Mr. Wolens claimed the payment made to Ms. Wolens in April 2008 (pursuant to Subparagraph 5(d) of the divorce decree) as deductible alimony on his original 2008 U.S. tax return. Pl.'s Cross-Mot. at 4. The Internal Revenue Service ("IRS") did not challenge this deduction at the time the return was filed. *Id*. The government considers that the statute of limitations has now expired for the IRS to review this deduction. Def.'s Resp. to Pl.'s Supp. Br. in Opp'n to Def.'s Mot. . . . and Resp. in Opp'n to Pl.'s Mot. for Summary Judgment ("Def.'s Opp'n") at 3, ECF No. 18.

Mr. Wolens also claimed the payment made to Ms. Wolens in 2009 (pursuant to Subparagraph 5(e) of the divorce decree) as deductible alimony on his 2009 U.S. tax return; this deduction was disallowed and is the subject of a pending case in the United States Tax Court, *Wolens v. Commissioner*, Docket No. 10853-15, filed April 27, 2015. *See* Brief in Support of Def.'s Mot. for an Order Dismissing the Compl. ("Def.'s Mot.") at 5 n.5, ECF No. 10; *see also* Hr'g Tr. at 5:11-18, 8:18-25, 9:1, 25:5-10 (explaining that the pending Tax Court case only pertains to the 2009 tax year and involves the same question of alimony as in the present case).

Mr. Wolens filed an amended 2007 tax return in December 2011 claiming a refund of $277,077 based on the payment in 2007, which he now reported as alimony. Compl. ¶ 25 & Ex. B. Mr. Wolens filed a second amended return for the 2007 tax year in February 2012, adding a claim for carryback of excess foreign tax credits from 2008 in the amount of $313,227 and consequently claiming an additional refund of $283,147. Compl. ¶ 28 & Ex. D.[5]

On February 10, 2015, the IRS disallowed Mr. Wolens' first amended return and partially disallowed his second amended return. Compl. ¶¶ 27, 30 & Exs. C and E. With regard to the first amended return, the IRS stated that the 2007 payment to Ms. Wolens was not deductible alimony. Compl. Ex. C. The IRS refunded $206,473 to plaintiff based on the foreign tax credit claimed in the second amended return, but disallowed $76,674 of his claim because the taxable income reported by plaintiff in the second amended return reflected the disallowed deduction for the purported alimony payment. Compl. ¶ 30 & Ex. E.[6] Separately, the IRS issued a notice of deficiency to Ms. Wolens on January 23, 2015 stating that she owed a total of $807,066 in additional taxes for the 2007, 2008, and 2009 tax years based on the payments made to her by Mr. Wolens pursuant to Subparagraphs 5(c) through (e) of the divorce decree. Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") Ex. 2, ECF No. 11-2. The notice of deficiency characterizes these payments as alimony, which are therefore considered taxable income to Ms. Wolens. *Id.* These assessments are the subject of another case pending in the United States Tax Court, *Wolens v. Commissioner*, Docket No. 15774-15, filed June 17, 2015. *Id.* at 4-5 & Ex. 1. The government acknowledges that its position in Ms. Wolens' case in the Tax Court, *i.e.*, that the payments are alimony, is inconsistent with the position it is taking in this case and in Mr. Wolens' case in the Tax court. Hr'g Tr. 7:8-15. It considers that the inconsistentcy is necessary to avoid a "whipsaw" attributable to divergent results. Hr'g Tr. 7:8-10.

Mr. Wolens filed his refund suit in this court on July 9, 2015, approximately five months after the notice of disallowance. On October 8, 2015, the government responded with a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6), asserting that the 2007 payment fails the test for alimony under I.R.C. § 71(b)(1). Def.'s Mot. at 3-4. At the hearing on the government's motion on January 6, 2016, Mr. Wolens' counsel raised a new argument that the case should be decided by applying New York law to the question of whether the 2007 payment was alimony, and that doing so would dispose of the case

---

[5]Mr. Wolens' second amended return applied the foreign tax credit to the previously amended taxable income reported on the first amended return ($10,928,961), not the taxable income from the original return ($11,720,407). Compl. Ex. D.

[6]In its motion to dismiss, the government questions why Mr. Wolens is claiming a refund in this case of $353,751 and asserts that, at most, he is only entitled to the $76,674 that was disallowed by the IRS respecting his second amended return. Def.'s Mot. at 6 n.6. However, because the second amended return already reflected a reduced taxable income based on the purported alimony payment, the court understands Mr. Wolens' present claim to include both the disallowed refund from the first amended return ($277,007) and the disallowed portion of the second amended return ($76,674) that would otherwise have been refunded to him but for the disallowance of the first amended return. That said, by adding these two claims, the court considers the total refund claim to be $353,681.

4

as a matter of law in plaintiff's favor. Hr'g Tr. 33:4-17, 34:20-25, 35:1-8. The court ordered both parties to submit supplemental briefs on this choice of laws issue. Order of Jan. 6, 2016, ECF No. 14. Plaintiff's supplemental brief included a motion for summary judgment claiming that under both New York and United Kingdom law, the 2007 payment qualified as deductible alimony. Pl.'s Cross-Mot. at 1, 5. The government's supplemental brief filed January 29, 2016, responded to Mr. Wolens' cross-motion. Both motions are now ready for disposition.

## ANALYSIS

### A. *Jurisdiction*

The Tucker Act, 28 U.S.C. § 1491(a)(1), grants this court jurisdiction over federal tax refund cases. *Smith v. United States*, 495 Fed. Appx. 44, 48 (Fed. Cir. 2012); *Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002); *McCann v. United States*, 105 Fed. Cl. 120, 122 (2012), *aff'd*, 2012 WL 6839761 (Fed. Cir. Nov. 27, 2012) (order granting summary affirmance). I.R.C. § 7422 governs the specific procedural requirements for such cases. *See Herrmann v. United States*, 124 Fed. Cl. 56, 63 (2015); *Sandoval Lua v. United States*, 123 Fed. Cl. 269, 272 (2015), *appeal pending*, No. 2016-1313 (Fed. Cir. Dec. 14, 2015). Taxpayers must first pay the assessed tax in full and file a tax refund claim with the IRS before bringing suit in federal court. I.R.C. § 7422(a); *see also Ledford*, 297 F.3d at 1382. If the refund claim is denied, the taxpayer generally must file suit within two years, *see* I.R.C. § 6532(a)(1), and then may only raise the claims and arguments previously presented to the IRS. *See Duffy v. United States*, 120 Fed. Cl. 55, 60 (2015) (citing *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000)), *aff'd*, __ Fed. Appx. __, 2016 WL 98514 (Fed. Cir. Jan. 8, 2016).

The court has jurisdiction over Mr. Wolens' tax refund claim. He timely filed his 2007 U.S. tax return without deducting the 2007 purported alimony payment from his taxable income for the year, and paying the full tax liability without this deduction. Compl. Ex. B. His first and second amended returns filed in December 2011 and February 2012 raised the alimony and tax-carryback claims, Compl. ¶¶ 25, 28 & Exs. B and D, and the IRS addressed and decided those claims, Compl. ¶¶ 27, 30 & Exs. C and E. Mr. Wolens' tax refund claim in this court has the same factual and legal basis as his previous claims to the IRS, *i.e.*, that the 2007 payment to Ms. Wolens was deductible alimony. Compl. ¶ 3. These circumstances satisfy the requirements for a tax refund suit in this court. I.R.C. §§ 6532(a)(1), 7422; *see also, e.g.*, *Duffy*, 120 Fed. Cl. at 62-63 (finding jurisdiction over a refund claim where the taxpayer fully paid tax for a given year, filed an amended return claiming a refund, and later filed a complaint when that refund was disallowed).

### B. *Government's Motion to Dismiss Under RCFC 12(b)(6)*

As an affirmative defense, a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). When such a motion is made, the court must examine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[7] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The court must "draw on its judicial experience and common sense" when evaluating, in the context of a motion to dismiss under RCFC 12(b)(6), whether a claimed right to relief is plausible. *Iqbal*, 556 U.S. at 679. In doing so, the court "must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). The court is not, however, similarly bound to accept legal conclusions contained in the same allegations. *Twombly*, 550 U.S. at 555.

Here, the government in essence argues that the factual matter provided by Mr. Wolens in his complaint, when viewed in light of the provisions of I.R.C. § 71(b)(1), cannot as a matter of law establish a claim for relief. Def.'s Mot. at 4, 7. Under the Internal Revenue Code, an individual taxpayer is allowed a deduction from his or her taxable income in "an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year." I.R.C. § 215(a). The term "alimony or separate maintenance payment" is defined as any payment in cash if:

> (A) *such payment is received by* (or on behalf of) *a spouse under a divorce* or separation *instrument*,
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, *and*
> (D) *there is no liability to make any such payment for any period after the death of the payee spouse* and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

IRC § 71(b)(1) (emphasis added). The government concedes that the 2007 payment meets the requirements of Subparagraphs (A) through (C) of this statute. Def.'s Mot. at 6. However, the government contends that it does not meet the requirement of Subparagraph (D) because under the terms of the divorce decree, Mr. Wolens would still have been obligated to make the 2007 payment, as well as all the payments specified in Paragraph 5 of the decree, in the event of Ms. Wolens' death. Def.'s Mot. at 6-7.

---

[7]RCFC 12(b)(6) mirrors the equivalent rule in the Fed. R. Civ. P. Consequently, decisions interpreting the Fed. R. Civ. P. are relevant to interpretation of the comparable provisions of the RCFC. *See Duffy*, 120 Fed. Cl. at 61 n.9; *Palafox St. Assocs., L.P. v. United States*, 114 Fed. Cl. 773, 780 n.2 (2014).

The government and Mr. Wolens concur that in determining whether the 2007 payment meets the requirements of I.R.C. § 71(b)(1)(D), the court should:

> (1) . . . look[] for an unambiguous termination provision in the divorce decree;
> (2) if there is no unambiguous termination provision, . . . look[] to whether the payments would terminate at the payee's death by operation of State law; and
> (3) if State law is unclear, . . . look[] solely to the divorce decree to determine whether the payments would terminate at the payee's death.

Def.'s Mot. at 7; Pl.'s Opp'n at 3 (both quoting *Rood v. Commissioner*, 103 T.C.M. (CCH) 1668, 1670 (2012) (in turn citing *Kean v. Commissioner*, 407 F.3d 186, 191 (3d Cir. 2005); *Fithian v. United States*, 45 Fed. Appx. 700, 701 (9th Cir. 2002); *Lovejoy v. Commissioner*, 293 F.3d 1208, 1212-13 (10th Cir. 2002); *Hoover v. Commissioner*, 102 F.3d 842, 847-48 (6th Cir. 1996); *Leventhal v. Commissioner*, 79 T.C.M. (CCH) 1670 (2000))).

As to the first step, the government argues not only that the divorce decree does not have an unambiguous termination provision for the 2007 payment, but that it conversely provides that the obligation to make the 2007 payment *would not* terminate upon Ms. Wolens' death. Def.'s Mot. at 7. As evidence of this, the government points to Paragraph 10 of the decree, which states that "save as aforesaid" neither of them "would be entitled to apply for an order under the Inheritance (Provision for Family and Dependents) Act 1975 even if, by the date of their death, the other party had become domiciled in England and Wales (neither being so domiciled at present)." Def.'s Mot. at 8 (quoting Divorce Decree at 6). The government asserts that because the 2007 payment is ordered in Paragraph 5 of the decree, it falls under the "save as aforesaid" exception set out in Paragraph 10, and therefore Ms. Wolens' estate *would* be entitled to apply for an order to enforce the payment under the Inheritance (Provision for Family and Dependents) Act 1975 ("Inheritance Act"). Def.'s Mot. at 8. The government cites the 10th Edition of Black's Law Dictionary as defining "aforesaid" as "[m]entioned above; referred to previously." *Id*. 8 n.7. The government consequently asserts that the phrase "save as aforesaid" operates to exclude any prior portion of the decree (including the payments directed in Paragraph 5) from the provisions of Paragraph 10. *Id*. at 8; *see also* Def.'s Reply in Further Support of Def.'s Mot. ("Def.'s Reply") at 4, ECF No. 12. In short, as the government would have it, the parties *would not* be precluded from applying for an order under the Act relating to any of the items enumerated in the divorce decree; they would only be precluded from raising any new claims under the Act relating to their former marital property or obligations.

The Inheritance Act allows the estate of a person domiciled in England and Wales to seek a court order for payment on behalf of the deceased. Inheritance (Provision for Family and Dependents) Act 1975, c. 63, §§ 1-2 (Eng. & Wales). This authorization encompasses a request for a court order to vary or revoke the continuation either of "periodical payments" under the Matrimonial Causes Act 1973 or of payments under a "maintenance agreement" between former spouses. *Id*. §§ 16-17. The Act states that a divorce decree can specify that, in the event of the death of one party, the other party is not entitled to apply for an order under the Act. *Id*. § 15. Paragraph 10 of the Wolens divorce decree does just that: it prevents either party from bringing an action under the Act "even if, by the date of their death, the other party had become domiciled in England and Wales (neither being so domiciled as present)." The government acknowledges

that neither Mr. Wolens nor Ms. Wolens had or has established a domicile in England or Wales, and that this additional hurdle would apply even to the "save as aforesaid" exception set out in Paragraph 10 of the decree (including the payments specified in Paragraph 5). Def.'s Reply at 5.

Respecting the second step in the I.R.C. § 71(b)(1)(D) inquiry, the government asserts that the appropriate law to apply to the question of whether the payments in Paragraph 5 would terminate upon the death of Ms. Wolens is the law of the United Kingdom, because the decree was issued by the United Kingdom's High Court of Justice. Def.'s Mot. at 9. Accordingly, the government argues that under U.K. law, the 2007 payment, as well as the other payments specified in Paragraph 5, would be considered lump-sum distributions of marital assets, and not alimony or maintenance payments. *Id.* The government asserts that lump-sum payments are intended to be distinct from "periodical payments"—which are more typically associated with maintenance payments—as demonstrated by their separate listing in the Matrimonial Causes Act. *Id.* at 10 (citing Matrimonial Causes Act 1973, c. 18, § 23(1)(a) through (c) (Eng. & Wales) (stating that financial provision orders can be for periodical payments, secured periodical payments, or lump-sum payments)). As evidence that the 2007 payment was a lump-sum payment and not a periodical payment, the government points not only to the use of the term "lump sum" in Paragraph 5, but also the fact that the language and structure of Paragraph 5 closely mirrors the sample language adopted by the U.K. Family Division's Financial Remedies Working Group for a series of lump sum orders:

> The [applicant]/[respondent] shall pay to the [respondent]/[applicant] the following lump sums:
>
> a. £[*insert*] by [*insert time*] on [*insert date*];
> b. £[*insert*] by [*insert time*] on [*insert date*]; and
> c. £[*insert*] by [*insert time*] on [*insert date*].

Def.'s Opp'n at 5 (citing Financial Remedy Omnibus, The Orders Project, U.K. Family Division at ¶ 52).

The government cites several United Kingdom cases in support of the contention that lump-sum payments, as contrasted to periodical payments, are considered a division of marital assets and are often ordered to achieve a "clean break" divorce. Def.'s Reply at 8 (citing *White v. White*, [2001] 1 AC (H.L.) 596 (appeal taken from Eng.) (describing the use of a lump-sum payment to achieve a "clean break" divorce); *Pearce v. Pearce*, [2003] EWCA (Civ) 1054 [39] (Eng.) (discussing the use of lump-sum payments to achieve a "clean break," and the preference for use of a lump-sum payment to achieve a clean break rather than periodical (maintenance) payments)); *see also* Def.'s Mot. at 10-11 (citing *Cowan v. Cowan* [2001] EWCA (Civ) 679 [8] (Eng.) (applying the *White* case to a lump-sum division of assets, in part attributable to the wife's financial needs)). There is precedent in the United Kingdom suggesting that because lump-sum payments are considered a division of assets, the obligation to make them does not terminate upon the payee spouse's death. *See* Def.'s Mot. at 11-12 (citing *Barder v. Barder* [1988] 1 A.C. (H.L.) 20 (appeal taken from Eng.) (holding that a former spouse's entitlement to a lump-sum payment survived her death); *Richardson v. Richardson* [2011] EWCA (Civ.) 79 [8b] (Eng.) (holding that the estate of a deceased former spouse was entitled to receive a lump-sum payment

ordered in a divorce decree because of the continued need for the husband and wife to "share equally in the assets"); *Purse v. Purse* [1981] 2 All ER 465 (stating, in dicta, that "an appeal against an order for a lump sum or a property adjustment order" would have to proceed in the event of the payee spouse's death because "important property rights are at stake")). Based on these precedents, the government argues that Paragraph 5 is a division of marital assets achieved through a series of lump-sum payments created, in part, because Mr. Wolens and Ms. Wolens did not have sufficient liquidated assets available at the time of their divorce to make an immediate "clean break." Def.'s Mot. at 12; Def.'s Opp'n at 7-8; Hr'g Tr. at 15:1-8.

Finally, with regard to the third step in the I.R.C. § 71(b)(1)(D) inquiry, the government argues that the plain language of the divorce decree supports the conclusion that the obligation to make the payments in Paragraph 5 would not have ended in the event of Ms. Wolens' death. Def.'s Mot. at 13-14. In doing so, that government points not only to the previously discussed language of Paragraph 10—which, as the government would have it, would allow Ms. Wolens' estate to seek an order under the Inheritance Act to enforce the payments in Paragraph 5—but also the provisions in Paragraph II of the divorce decree requiring Mr. Wolens to obtain life insurance to secure the obligations in Paragraph 5. *Id.* at 13. The government argues that because the decree inferentially addresses the continuation of payments upon Mr. Wolens' death, but does *not* mention termination of payments upon Ms. Wolens' death, no termination provision was intended with regard to Paragraph 5. *Id.* at 13-14 (citing *Fithian*, 45 Fed. Appx. at 701-02 (concluding that a payment under a divorce decree could not be alimony when it did not contain a termination-on-death provision, but other forms of support in the decree did have such a provision); *Crabtree v. Commissioner*, 110 T.C.M. (CCH) 219, (2015) (same); *Laremore v. Commissioner*, No. 15737-12S, 2014 WL 4652901, at *4 (T.C. Sept. 18, 2014) (same)).

The salient question becomes whether, notwithstanding the government's arguments, Mr. Wolens has pled sufficient factual allegations to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 557. When construed in the light most favorable to Mr. Wolens, the facts alleged plausibly establish that the 2007 payment to Ms. Wolens could have been an alimony payment under I.R.C. § 71(b)(1), and therefore he could have been entitled to deduct that payment from his 2007 taxable income. First, as the plaintiff notes in his response, the divorce decree does not contain an "unambiguous" termination-on-death provision for the payments specified in Paragraph 5, nor does it contain an unambiguous provision that the payments will *not* terminate upon the payee's death. Pl.'s Opp'n at 6-7; *see also, e.g.*, *Fithian*, 45 Fed. Appx. at 701 (finding that where there is no "express termination" language, "the divorce decree as a whole is ambiguous as to whether a termination-on-death condition applie[s]").[8] Therefore, resolution of the termination question under I.R.C. § 71(b)(1)(D) turns

---

[8] The government suggests in its original motion to dismiss that Paragraph 10 of the divorce decree contained an unambiguous *non*-termination provision. Def.'s Mot. at 7-8. However, at most Paragraph 10 establishes that if Ms. Wolens had died before receiving the 2007 payment, her estate would not have been *precluded* from seeking an order to enforce the payment under the Inheritance Act, assuming Ms. Wolens had established domicile in England or Wales prior to her death. *See supra*, at 7. In its reply in support of its motion, the government appears to concede that the divorce decree "lack[s] express termination language" (and conversely, lacks express *non*-termination language), but it nevertheless asserts that the

on application of the pertinent source of law.  If under that law the result is still ambiguous, the court looks to the language of the divorce decree to resolve the ambiguity.  *See supra*, at 7 (reciting the three-part inquiry under I.R.C. § 71(b)(1)(D) established in *Rood*, et al.).

The government argues that under United Kingdom law, the 2007 payment would be deemed a lump-sum division of marital assets, and therefore the obligation to pay it would not terminate upon Ms. Wolens' death.  Def.'s Mot. at 9-12.  However, although the government has shown that the term "lump sum" is typically associated in the United Kingdom with a division of marital assets, it has not established that this is the only reasonable interpretation of Paragraph 5.  In particular, questions of fact arise regarding the operation of Paragraph III of the divorce decree, which states that Mr. Wolens will cease to be liable for the "interim financial arrangements" related to his "contribution to [Ms. Wolens'] costs" of £6000 per month once he makes the first lump-sum payment referred to in Paragraph 5.  Compl. Ex. A at 2.  It is possible that, as the government argues, Paragraph 5 operated as a division of marital assets that replaced the need for the regular support payments specified in Paragraph III.  *See* Hr'g Tr. at 15:20-25.  Nonetheless, it is also possible that the payments contemplated by Paragraph 5, or at least most of them, served as a *continuation* of these support payments, and therefore the 2007 payment is properly viewed as alimony.  The only evident exception is the payment provided in Subparagraph 5(b), which was to be made on the date of the sale of the matrimonial home or Mr. Wolens' exercise of an option to purchase the home.  The payment under that Subparagraph evidently relates to a division of assets.  Additionally, the court must take into account the fact that a division of assets occurred pursuant to Paragraph 6 of the Divorce Decree which ordered the transfer to Ms. Wolens of all of Mr. Wolens' interest in two individual retirement accounts.  Divorce Decree at 5.

Questions of fact also remain as to the operation of Paragraph II of the decree, which required Mr. Wolens to work with Ms. Wolens to obtain "life insurance on his life sufficient to secure the payments due to [Ms. Wolens] under [Subparagraphs 5(c) through (e)] in the event of his death."  Compl. Ex. A at 2.  Again, it is possible that the reference to Mr. Wolens' death in this paragraph, coupled with the lack of any termination-on-death provision in Paragraph 5, signifies that the parties did not intend for there to be a termination provision in the decree.  *See* Def.'s Mot. at 13-14.  However, it is also possible that Paragraph II was meant to signify that that payments in Subparagraphs 5(c) through (e) were only meant to continue in the event of Mr. Wolens' death, but not meant to continue in the event of Ms. Wolens' death.  In the context

---

appropriate inquiry under the first step in interpreting I.R.C. § 71(b)(1)(D) is "whether the divorce instrument is silent" as to a termination-on-death provision.  Def.'s Reply at 3 (citing *Nye v. Commissioner*, 106 T.C.M. (CCH) 32 (2013)).  While it is true that in *Nye*, the Tax Court noted that the instrument in question was silent as to whether there was a termination provision, this was in the context of finding that there was no unambiguous termination provision (the first step of the three-part inquiry) and then moving on to the second and third step.  *Nye*, 106 T.C.M. (CCH) 32, __, 2013 WL 3581969, at *5.  As a result, the government's arguments with respect to Paragraph 10 are more relevant to the third step of this inquiry, *i.e.*, if there is no unambiguous termination provision and the question is still ambiguous under operation of pertinent law, the court will rely solely on the language of the divorce decree.

of the government's motion to dismiss, the court need not look further into the resolution of these questions, except to state that based solely on context of the divorce decree, and the facts currently alleged, the government has failed to establish that Mr. Wolens cannot plausibly state a claim for relief. *Iqbal*, 556 U.S. at 678.

Accordingly, the court has concluded that the government's motion to dismiss should be denied.

### C. *Plaintiff's Motion for Summary Judgment Under RCFC 56(a)*

Summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute is one that "may reasonably be resolved in favor of either party." *Id.* at 250. "The inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Mr. Wolens asserts that under the second step of the three-step inquiry for a termination-on-death provision under I.R.C. § 71(b)(1)(D), *see supra*, at 7, the court should apply New York state law instead of the law of the United Kingdom. Pl.'s Cross-Mot. at 5-7. Mr. Wolens argues that under New York law, the 2007 payment would have terminated upon the death of Ms. Wolens because the payment is appropriately characterized as a maintenance payment and not an "equitable distribution" of assets. *Id.* at 9-10 (citing *Leventhal*, 79 T.C.M. (CCH) 1670 (finding under New York law that, in the absence of a clear divorce order, recurring payments to a former spouse were support payments that would terminate upon the payee spouse's death)). Mr. Wolens points out that the Tax Court in *Leventhal* distinguished its earlier decision in *Megibow v. Commissioner*, 76 T.C.M. (CCH) 1072 (1998), which had found that a one-time payment was an equitable distribution, the obligation for which would not have terminated upon the payee spouse's death. *See Leventhal*, 79 T.C.M. (CCH) 1670, __ n.13, 2000 WL 288277, at *12.

Whether New York law or the law of the United Kingdom is applied in this case, factual questions remain regarding the operation of Paragraph 5 of the divorce decree in conjunction with its other provisions, including Paragraphs II and III. Therefore, there are genuine disputes of material fact at this time such that the court cannot determine whether plaintiff is entitled to judgment as a matter of law. *See* RCFC 56(a); *Anderson*, 477 U.S. at 248; *see also, e.g.*, *Sundance Helicopters, Inc. v. United States*, 104 Fed. Cl. 1, 11 (2012) (denying a motion for summary judgment because genuine disputes of material facts remained regarding tax liability).

Accordingly, the court has concluded that the plaintiff's motion for summary judgment should also be denied.

## CONCLUSION

For the reasons stated, the government's motion to dismiss under RCFC 12(b)(6) is DENIED. Plaintiff's motion for summary judgment under RCFC 56(a) is also DENIED.

The government is requested to file its answer to plaintiff's complaint by March 25, 2016.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge